## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Alecto Healthcare Services LLC, | ) | Case No. 23-10787 (JKS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| The Reed Action Judgement Creditors, | ) | Civil Action No. 1:24-cv-00494-GBW |
| | ) | |
| | ) | Bankruptcy BAP No. 23-65 |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Alecto Healthcare Services LLC, | ) | |
| | ) | |
| Appellee. | ) | |

### <u>APPELLANTS' REPLY BRIEF</u>

Dated:  December 18, 2024

**SULLIVAN · HAZELTINE · ALLINSON LLC**
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: <u>bsullivan@sha-llc.com</u>
        <u>whazeltine@sha-llc.com</u>

and

Bren J. Pomponio, Esq.
Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email:  colten@msjlaw.org
        bren@msjlaw.org

and


John Stember, Esq.
Maureen Davidson-Welling, Esq.
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email: jstember@stembercohn.com
        mdavidsonwelling@stembercohn.com

*Counsel for The Reed Action*
*Judgment Creditors*

# <u>TABLE OF CONTENTS</u>

*Page*

I.    Alecto was not eligible to be a subchapter V debtor .......................................1

   A. The LHP Claim was not contingent ...........................................................1

   B. The LHP Claim was liquidated ..................................................................5

II.   The Confirmation Order should be reversed ................................................10

   A. The Reed Creditors correctly state the standard of review .....................10

   B. Despite Debtor's efforts to downplay approval requirements, courts must "carefully" review compromise and make informed, independent judgment .................................................................................................12

   C. The Debtor bore the burden of proof on the insolvency issue ................14

   D. Mr. Balasiano's testimony on solvency was not credible .......................17

   E. The Debtor's evidence was insufficient to establish a *prima facie* case that the Debtor was solvent at the time of the Sunrise Transfer ...................19

   F. The Bankruptcy Court erred by misapplying the factors for approval of a settlement..............................................................................................21

Conclusion ............................................................................................................22

i

<u>**TABLE OF AUTHORITIES**</u>

*Page*

<u>**Cases**</u>

*Barcal v. Laughline (In re Barcal)*, 213 B.R. 1008 (B.A.P. 8th Cir. 1997) ...............6

*Braniff Airways, Inc. v. Exxon Co., U.S.A*, 814 F.2d 1030 (5th Cir. 1987)...............3

*In re Am.'s Ins. Ctr., Inc.*, No. 20-1506, 2021 WL 3560668,
  (3d Cir. Aug. 12, 2021)....................................................................................12

*In re Ashing Corp.*, 552 B.R. 80 (D. Del. 2015)....................................................10

*In re Fostvedt*, 823 F.2d 302 (9th Cir. 1987) ..............................................................6

*In re Hall*, 650 B.R. 595 (Bankr. M.D. Fla. 2023) ................................................6, 7

*In Re LandSource Communities Dev., LLC*, 612 B.R. 484 (D. Del. 2020).............10

*In re McKenzie Contracting, LLC*, Case No. 8:24-bk-01255-RCT,
  2024 WL 3508375 *1, Colton, J. (Bankr. M.D. Fla. 2024).................................7

*In re Mitchell*, 255 B.R. 246 (Bankr. D. Mass 2000) .................................................6

*In re Nortel Networks, Inc.*, 669 F.3d 128 (3d Cir. 2011) .................................10, 11

*In re Nutraquest, Inc.*, 434 F.3d 639 (3d Cir. 2006)..........................................11, 13

*In re O'Brien Env't Energy, Inc.*, 188 F.3d 116 (3d Cir. 1999)..............................10

*In re Promise Healthcare Group, LLC*, No. 18-12491, 2023 WL 3026715,
  (Bankr. D. Del. Apr. 20, 2023) ...........................................................................8

*In re Pulliam,* 90 B.R. 241 (Bankr. N.D. Tex. 1988) ...............................................4

*In re Rosenberg*, 414 B.R. 826 (Bankr S.D. Fla. 2009).............................................3

*In re SemCrude, L.P.*, 428 B.R. 590 (D. Del. 2010).................................................10

*In re Sullivan*, 245 B.R. 416 (N.D. Fla. 1999)............................................................7

*In re Summit Metals, Inc.*, 477 F. App'x 18 (3d Cir. 2012) ...............................16, 17

*In re Taylor*, No. 08-00526-JDP, 2008 Bankr. LEXIS 2313
    (Bankr. D. Idaho July 25, 2008) ............................................................4

*In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011) ....................15

*In re Wilson*, 9 Bankr. 723 (Bankr. E.D.N.Y. 1981) ..................................................5

*In re Zhang Medical P.C.*, 655 B.R. 403 (Bankr. S.D.N.Y. 2023) ..........................7

*Myers v. Martin (In re Martin),* 91 F.3d 389 (3d Cir. 1996))...........................13, 14

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968).................................................................................13, 14

*Sexton v. Dreyfus,* 219 U.S. 339, 344-345, 31 S. Ct. 256, 55 L. Ed. 244 (1911).......8

## Statutes

11 U.S.C. § 1182(1)(A)...............................................................................................1

## Other Authorities

Cal. Civ. Code § 3439.02(a) ......................................................................................19

The Debtor's Response Brief fails to provide legal or factual support for the Bankruptcy Court's erroneous decisions that the Debtor was eligible to be a subchapter V Debtor and that the Debtor's settlement of fraudulent transfer claims against its insiders in connection with the confirmation of its plan meets the established criteria for approval of such settlements, as set forth below.

## I.  Alecto was not eligible to be a subchapter V debtor.

As of the Petition Date, Bankruptcy Code Section 1182(1)(A) defined a Subchapter V "debtor" as:

> [A] person engaged in commercial or business  activities . . . that has ***aggregate non-contingent liquidated secured and unsecured debts*** as of the date of the filing of the petition or the date of the order for relief in an amount ***not more than $7,500,000***….

11 U.S.C. § 1182(1)(A) (emphasis supplied). The Reed Creditors submitted evidence that the filed and scheduled liquidated and non-contingent claims against the Debtor totaled $7,890,536.14, including the claim filed by LHP Hospital Group ("LHP") for $3,739,653.77. LHP Hospital Group, Inc. Claim No. 15-1. Appendix Ex. 9, A0290 – 378.

### A. The LHP Claim was not contingent.

Although the Bankruptcy Court's designation decision rested on a finding that the LHP Claim was unliquidated [Opening Brief, pp. 27-28, citing 12/1/31 Tr. at 8:14-22, A.0252], Debtor's Response Brief recognizes that this conclusion is unsupportable under the legal standards for evaluating whether a claim is liquidated

1

and instead argues that this Court may affirm the Bankruptcy Court's decision on the grounds that the LHP claim was contingent.  See Resp. Br. at p. 38 ("That the Bankruptcy Court did not expressly apply the term 'contingent' to its finding is immaterial.  This Court 'may affirm a judgment on any ground apparent from the record, even if the [lower] court did not reach it.'")  The Debtor's argument on appeal is that the LHP Claim was contingent because the LHP Settlement Agreement provided that LHP would make a demand before Alecto had the duty to pay. This is based on the Bankruptcy Court's erroneous conclusion that "Unless and until LHP made a specific demand the debtor had no obligation to pay." 12/1/2023 Tr. 6:22 - 25. Appendix Ex. 4, A250.

The fact that an agreement provides for a demand before payment is due does not render the underlying obligation contingent until a demand is made.

The Settlement Agreement only provided a *procedure* for payment:

Accordingly, the Alecto Defendants agree to the following procedure for payment of Future Expenses.

A. LHP shall make written demand upon the Alecto Defendants for a specified amount in accordance with the forbearance schedule set forth in Paragraph 8….

[Settlement Agreement, Bankr. Ct. Docket No. 226-3, ¶ 6]. This procedure for payment did not create the Debtor's liability—it only established a procedure to determine when payment must be made. The Debtor's liability to LHP arose upon Sherman/Grayson's breach of the Lease Agreements and increased monthly with

each payment made by LHP on its own guarantee. There is nothing in the Settlement Agreement that conditions Alecto's obligation on a demand for payment. *See Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030, 1036 (5th Cir. 1987) ("The debt owed … does not have to be calculated prior to the filing of the bankruptcy petition[.] … The debt was absolutely owed; it just was not due until a calculation of the amount … was made.")[1]

The facts here differ significantly from the facts in the *Rosenberg* case, the sole authority relied upon by the Debtor to support its contention that the LHP claim was contingent without a payment demand. [Resp. Br., pp. 37-38]. In *In re Rosenberg*, the underlying agreement specifically conditioned the debtor's obligation on a demand for payment and an opportunity to dispute: "[A] demand for payment must be made upon Rosenberg before any liability matures under the Limited Guaranty." 414 B.R. 826, 844 (Bankr. S.D. Fla. 2009). Accordingly, the court ruled that the claimant had no liability to Rosenberg. In contrast, the LHP Settlement Agreement expressly eliminated the Debtor's right to dispute the obligation as long as LHP made the payments it sought to recover and the Settlement

---

[1] Consider a residential mortgage obligation where the mortgagee agrees to send the borrower monthly mortgage statements; if the mortgagee fails to send a monthly statement, does that mean the mortgage obligation is contingent and the borrower is not obligated until such time as he receives a statement? Of course not.

Agreement provided a right of judgment by confession if the Debtor did not pay the amounts specified.  [Settlement Agreement, Bankr. Ct. Docket No. 226-3, ¶ 6].

Typically, with a guaranty agreement, the guarantor's liability attaches at the time of default on the debt the guarantor has guaranteed:

> A guaranty of payment, which is also known as an absolute guaranty, requires the guarantor to pay immediately upon the principal obligor's default. The guarantor's liability attaches upon the primary obligor's default even if the guarantor is not given notice of the default. *United States v. Little Joe Trawlers, Inc.*, 776 F.2d 1249, 1253 (5th Cir. 1985). "[The] demand [for payment] serves solely as a request for payment as opposed to the creation of liability." *In re Wilson*, 9 Bankr. 723, 725 (Bankr. E.D.N.Y. 1981). An absolute guaranty ceases to be contingent upon the principal obligor's default.

*In re Pulliam*, 90 B.R. 241, 243 (Bankr. N.D. Tex. 1988); *see also In re Taylor*, No. 08-00526-JDP, 2008 Bankr. LEXIS 2313, at *10 (Bankr. D. Idaho July 25, 2008) ("An absolute guaranty is an 'unconditional undertaking on the part of the guarantor that he will pay the debt or perform the obligation immediately upon the debtor's default . . . .'").

Moreover, a demand for payment in a guaranty agreement does not create the liability, the default of the principal obligor does.

> That the Bank did not make a demand for payment until March 28, 2008 is of no moment. As this Court recently explained, a demand for payment is not essential to the existence of liability for a guaranteed debt. Debtors were liable for the entire outstanding principal balance and accrued interest and late fees the moment Raftis defaulted on its obligation.

*Id.* at *12; *see also*, *e.g.*, *In re Wilson*, 9 B.R. 723, 725 (Bankr. E.D.N.Y. 1981) ("The demand serves solely as a request for payment as opposed to the creation of liability.").

When Sherman/Grayson ceased payments to the Landlord and vacated the office suites subject to the Lease Agreements, LHP's obligation to satisfy Sherman/Grayson's obligations under the Lease Agreement kicked in, as did the Debtor's obligation to reimburse LHP for the amounts LHP paid to the landlord. The Bankruptcy Court's finding that the procedure for payment by the Debtor, which included a demand by LHP, created the liability on the guaranty recognized by the Settlement Agreement, was clearly erroneous. Accordingly, the Debtor's reliance on that finding to demonstrate that the LHP obligation was contingent as of the petition date is misplaced.

### B. The LHP Claim was liquidated.

The Debtor continues the Bankruptcy Court's conflation of the noncontingent and liquidated debt analysis in its backhanded efforts to support the Bankruptcy Court's conclusion that the LHP Claim was unliquidated. A careful reading of the Debtor's Brief reveals that the Debtor argues the LHP Claim was not liquidated because the Claim was contingent. *See* Appellee's Br. at 41-42 ("Given the vagaries of *when* a demand might be made, and what expenses might be included in the demand, the Bankruptcy Court was justified in concluding that "the LHP debt was

unliquidated as of the petition date.").  As demonstrated below, the Debtor's analysis rests on the flawed conclusion that its knowledge on the petition date of the amount due is relevant to the determination.

All Parties agree a claim is liquidated if (i) it is subject to ready determination and precision in computation of the amount due, and (ii) the amount due can be readily ascertained either by reference to an agreement or by simple mathematics. *See*, *e.g.*, *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987); *In re Mitchell*, 255 B.R. 246, 360 (Bankr. D. Mass 2000).

> "[C]ourts have generally held that a debt is liquidated if its amount is readily and precisely determinable, where the claim is determinable by reference to an agreement." *United States v. May*, 211 B.R. 991, 996 (citing *Collier on Bankruptcy*, 15th Ed. at 1109.06[2][c] (March 1997)). Ordinarily, debts of a contractual nature are "subject to ready determination and precision in computation of the amount due" and, therefore, are considered liquidated, even if subject to a substantial dispute. *Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1014 (B.A.P. 8th Cir. 1997).

*In re Hall*, 650 B.R. 595, 599 (Bankr. M.D. Fla. 2023); *see also Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1014 (B.A.P. 8th Cir. 1997) ("a disputed contract liability was liquidated even though adjudication of the debt required submission of evidence at trial.").

Debtor does not dispute the amount of the LHP Claim or the calculation of that Claim. Rather, Debtor argues that the Claim cannot be calculated by reference to the original guaranty agreement because that agreement was superseded by the

Settlement Agreement. However, the guaranty is undeniably ***an*** agreement, and the Court may look to the agreement in order to determine if the amount of the LHP Claim is "readily precise and determinable." *In re Hall*, 650 B.R. at 599. Debtor's argument – and the Bankruptcy Court's decision finding that the Settlement Agreement superseded the guaranty agreement – are red herrings. To be sure, the fact that the Settlement Agreement superseded the guaranty is, as the Reed Creditors have explained, irrelevant. [Opening Brief, pp. 35-37]. The guaranty agreement may be referenced in order to calculate the amount of the LHP Claim.

Moreover, the Debtor's argument that the LHP Claim was unliquidated because the Debtor was unaware of the exact amount due to LHP [Resp. Br. pp. 41 – 42] is meritless. As discussed in the Opening Brief, the Debtor's lack of knowledge of the amounts owed to LHP is simply not relevant to the determination of whether the LHP Claim was liquidated. *See* Opening Brief at pp. 30-32, citing *In re Hall,*[2] *In re Sullivan,*[3] *In re Zhang Medical P.C.,*[4] *In re McKenzie Contracting, LLC.*[5] Rather, the amount of the LHP Claim was readily calculable from the Lease Agreements and readily available documentation regarding the amounts due to the Landlord under the Lease Agreements.

---

[2] 650 B.R. 595, 600 (Bankr. M.D. Fla. 2023).
[3] 245 B.R. 416, 418 (N.D. Fla. 1999).
[4] 655 B.R. 403, 409 (Bankr. S.D.N.Y. 2023).
[5] *In re McKenzie Contracting, LLC*, Case No. 8:24-bk-01255-RCT, 2024 WL 3508375 *1, Colton, J. (Bankr. M.D. Fla. 2024).

The Debtor attempts to draw a distinction between the terms "debt" and "claim" to skirt the fact that the analysis of its debts on the petition date requires the consideration of proofs of claim filed by creditors. [Resp. Br., pp. 39-42]. To the extent there is a distinction, it is meaningless in this case, as the Debtor's only expressed challenge to the LHP claim is that it did not know its precise amount on the petition date. The assertion of a claim by the claims bar date is not a post-petition event that changes the nature of the claim asserted from contingent to liquidated; it is in fact compliance with the obligations imposed on creditors as a result of the filing of the petition, the imposition of automatic stay and the Bankruptcy Court's desire to treat all creditors equally. *See In re Promise Healthcare Group, LLC*, No. 18-12491, 2023 WL 3026715 *5, (Bankr. D. Del. Apr. 20, 2023), citing *Sexton v. Dreyfus,* 219 U.S. 339, 344-345, 31 S. Ct. 256, 55 L. Ed. 244 (1911). Consistent with that purpose, Bankruptcy Code section 502(b)(1) requires that the amount of all claims be determined "in lawful currency of the United States as of the filing of the petition." *Id*. *4.  While the eligibility determination is not based on the allowance of claims, the Bankruptcy Code recognizes that filed claims relate back to the petition date.  This principle eliminates the Debtor's nonsensical position that it can claim lack of knowledge as of the petition date of certain debts (despite actual knowledge when claims are filed) to avoid counting them for the subchapter V eligibility determination.

8

The determination of whether a debtor is eligible to proceed under subchapter V of the Bankruptcy Code is not an academic exercise, as it has significant implications for the terms of a plan that can be confirmed and the conduct of the case. Pursuant to 11 U.S.C. § 1191, the plan of a subchapter V debtor does not need to follow the absolute priority rule as long as it meets the fair and equitable requirements of that section and does not discriminate unfairly as to each impaired class of claims and interests. This permits the shareholders of a subchapter V debtor to retain their interests in the company without paying unsecured creditors in full. In addition, no creditors committee is formed in a subchapter V case, which means that any objecting creditor must fund its own challenges to the Debtor's plan or actions taken in its case. Furthermore, only a creditors committee can seek standing to pursue causes of action for breach of fiduciary duties by a Debtor when a Debtor declines to pursue them. These provisions of subchapter V afforded the Debtor in this case significant benefits and advantage for which it was not eligible.

Based on the foregoing, the Bankruptcy Court erred in ruling the LHP Claim was unliquidated and that the Debtor was eligible to be a subchapter V debtor. This Court should reverse the Bankruptcy Court and remand the case to the Bankruptcy Court for further proceedings consistent with its status as a regular chapter 11 debtor, not a subchapter V debtor.

## II.    The Confirmation Order should be reversed.

### A.  The Reed Creditors correctly state the standard of review.

The Debtor contends that the Reed Creditors offer an "incomplete" standard of review for appeal of the Confirmation Order and "focus on issues that have no material bearing" on the Bankruptcy Court's "exercise of discretion."[6] Resp. Br. 43. These contentions are disingenuous and lack merit.

As an initial matter, the Reed Creditors properly stated the standard for review of a bankruptcy court's order. *See* Opening Brief, pp. 4-5; *In re Ashing Corp.*, 552 B.R. 80, 83 (D. Del. 2015) (explaining reviewing court applies a "clearly erroneous" standard to findings of fact, a plenary standard to legal conclusions, and for mixed questions of law and fact, the court must accept findings of historical or narrative facts unless clearly erroneous, but exercises plenary review of the bankruptcy court's choice and interpretation of legal precepts and its application of those precepts to the historical facts); *In re Nortel Networks, Inc.*, 669 F.3d 128, 136 (3d Cir. 2011) (describing standard of review).[7]

---

[6] The Debtor cites *In Re LandSource Communities Dev., LLC*, 612 B.R. 484 (D. Del. 2020) and *In re SemCrude, L.P.*, 428 B.R. 590 (D. Del. 2010), but these cases do not concern Rule 9019(a) or review settlements of claims.

[7] The standard of review is also sometimes described as: "we review the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof. …A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." *In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999) (int. cit. om.).

The Debtor asserts that this is not the "only applicable standard," Resp. Br., p. 43, and points out that Reed Creditors' appeal includes portions of the Confirmation Order dealing with settlement and release of claims against insiders, and that such settlements under Bankruptcy Rule 9019(a) are reviewed under an abuse of discretion standard. Resp. Br., pp. 43 - 44. However, this distinction does not meaningfully change the standard of review applicable to the Bankruptcy Court's findings and analysis here, as Third Circuit precedents illustrate.

For instance, in *In re Nutraquest, Inc.*, 434 F.3d 639 (3d Cir. 2006), a case that the Debtor cites, the Court of Appeals for the Third Circuit reviewed a lower court's approval of a bankruptcy settlement, including application of the "'fair and equitable' rubric as well as the *Martin* factors to approve the settlement." *Id.* at 645. There, the Third Circuit acknowledged that it was applying a type of "abuse of discretion" standard, but further explained:

> We do not "disturb an exercise of discretion unless there is a definite and firm conviction that the court ... committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."…*Put another way, for us to find an abuse of discretion the District Court's decision must rest on "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Id. (internal quotation marks omitted).*

*In re Nutraquest*, 434 F.3d at 645 (emph. supp.) (int. citations and internal quotes omitted). This standard is strikingly similar to the general standard of review of bankruptcy court orders. *See, e.g., In re Nortel Networks, Inc.*, 669 F.3d at 136.

Specifically, the same types of errors (*i.e.*, clearly erroneous finding of fact, error of law, and error in application of law to fact) will *both* violate the general "standard of review" applicable to bankruptcy court orders *and* give rise to an abuse of discretion for purposes of settlements governed by Rule 9019(a). *See, e.g., In re Am.'s Ins. Ctr., Inc.*, No. 20-1506, 2021 WL 3560668, at *1-2 (3d Cir. Aug. 12, 2021) (vacating settlement where "court based its approval on a factual premise that is not supported by the record" undermining determination of fairness).

Thus, the Debtor's criticism that the Reed Creditors "focus on issues that have no material bearing on the Bankruptcy Court's exercise of discretion." Resp. Br., p. 43, is groundless and far off the mark. To the contrary: by pointing to clear errors of fact, errors of law, and errors in the application of law to historical/narrative facts in the Confirmation Order, the Reed Creditors highlight the very material issues that support reversal of the Confirmation Order under all applicable standards.

## B. Despite Debtor's efforts to downplay approval requirements, courts must "carefully" review compromises and make informed, independent judgments.

To downplay deficiencies in the Confirmation Order, the Debtor proclaims that bankruptcy courts need not "probe the merits," nor conduct a "mini-trial" or "full evidentiary hearing" when reviewing a settlement to determine if it falls in the "range of reasonableness." Resp. Br., pp. 44 - 45. Yet, these claims are overstated; Bankruptcy Rule 9019(a) by its terms normally requires a "hearing", *id.*, and it

remains the bankruptcy court's duty to conduct an informed, independent assessment of all relevant facts before approving any compromise.

Indeed, "the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them." *In re Nutraquest*, 434 F.3d at 644. Under Rule 9019(a), bankruptcy courts have a duty to make an informed, independent judgment that a compromise is fair and equitable before approving it. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). In making this determination, a bankruptcy court must consider, "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393

Moreover, as the Supreme Court emphasized in *TMT Trailer Ferry*,

There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*TMT Trailer Ferry*, 390 U.S. at 424–25; *see also In re Martin*, 91 F.3d at 393 (bankruptcy court "must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.").

Thus, in *TMT Trailer Ferry*, the Supreme Court refused to grant approval of a compromise and remanded where the record was "devoid of facts which would have permitted a reasoned judgment that the claims of actions should be settled" or on what terms, 390 U.S. at 440-441, and where the insolvency determination was not made in accordance with applicable standards. *Id.* at 441 ("Since the determination of insolvency was not made in accordance with the proper standards of valuation, neither the approval nor the confirmation of the plan can stand.").

In short, notwithstanding the Debtor's narrow characterizations, the law requires a robust, legally-sound, fact-based analysis.

### C.  The Debtor bore the burden of proof on the insolvency issue.

The sole issue on appeal from the Confirmation Ruling is whether the Bankruptcy Court erred in approving the releases of the Released Parties in consideration for the nominal payment of $25,000 (the "Insider Releases").

The Bankruptcy Court approved the Insider Releases as a settlement under Bankruptcy Rule 9019 based on application of the *Martin* factors. *See In re Martin*, 91 F.3d 389 (3d Cir. 1996). The Bankruptcy Court's primary error in applying the *Martin* factors was its finding that the potential fraudulent transfer claims against the

14

Alecto Members "have very little probability of success on the merits, if any." Confirmation Ruling p. 15. Appendix Ex. 51, A1622. In reaching this conclusion, the Bankruptcy Court found that "the Reed Creditors did not carry their burden to prove by a preponderance of the evidence that the Debtor was insolvent at the time of the Sunrise REH Transfer." Confirmation Ruling p. 10. Appendix Ex. 51, A1617. However, as discussed in the Opening Brief, it was the Debtor, not the Reed Creditors, who bore the burden of proving that the settlement regarding the Plan Releases fell above the lowest range of reasonableness. *See, e.g., In re Washington Mutual, Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011).

While acknowledging its burden of proving that the settlement fell above the lowest range of reasonableness, the Debtor argued in its Response Brief that neither party bore the burden of proof on solvency or insolvency because no fraudulent transfer claim was initiated. Resp. Br. p. 47. But this argument misses the mark. The Bankruptcy Court placed great weight on its conclusion that the potential fraudulent transfer claim had "very little probability of success on the merits." Moreover, it reached this conclusion by improperly placing the burden of proof on the probability of success on the merits on the Reed Creditors rather than the Debtor.

The Debtor attempts to analogize this case to cases where (i) a party moving for summary judgment meets its burden of proof, shifting the burden of persuasion to the other party (*In re Lenox Healthcare, Inc.*, 343 B.R. 96 (Bankr. D. Del. 2006))

15

or (ii) a claimant submits a proof of claim sufficient to establish the *prima facie* validity, shifting the burden to the objecting party to rebut the *prima facie* validity (*United States v. State Street Bank & Tr. Co.*, 520 B.R. 29 (Bankr. D. Del. 2014)). [Resp. Br. p. 48]. These cases are inapposite because, unlike here, the burden of proof shifted from the party with the initial burden of proof to the party not bearing the initial burden of proof. By contrast, in this case, the Bankruptcy Court never ruled that the Debtor met its initial burden of proof. Rather, it simply found that the Reed Creditors did not satisfy their burden of proving that the Debtor was insolvent at the time of the Sunrise REH Transfer. As discussed in the Opening Brief [pp. 44 – 47] and in Section II D, below, the Debtor failed to present evidence sufficient to establish that the Debtor was not insolvent at the time of the Sunrise Transfer. Accordingly, the Court erred in finding that potential fraudulent transfer claim had "very little probability of success on the merits."

The Debtor also argues that "to the extent that the Bankruptcy Court's phrasing might be viewed as off the mark, it was harmless error; the Bankruptcy Court knew it was evaluating a settlement, not trying a fraudulent conveyance action." Resp. Br. p. 49. Rather than explaining how its argument is relevant, the Debtor cites to *In re Summit Metals, Inc.*[8] as an analogous case. It is not.

---

[8] 477 F. App'x 18, 21 (3d Cir. 2012).

16

The issues on appeal in *Summit Metals*, as explained in the Response Brief, were (i) whether the bankruptcy court's decision approving a settlement was perfunctory and (ii) whether it "failed to properly consider the factors enunciated … in *In re Martin* for evaluating a settlement between an estate and an adverse party." Resp. Br. p. 49. That is not the issue here. Rather, the issue is whether the Bankruptcy Court erred as a matter law in putting the burden of proof of insolvency on the Reed Creditors. Here, it erred as a matter of law because the Debtor, not the Reed Creditors, had the burden of proving that the settlement of the Insider Releases should be approved.

### D.    Mr. Balasiano's testimony on solvency was not credible.

The Bankruptcy Court erred in relying on Mr. Balasiano's testimony on the solvency issue because his testimony was not credible. As discussed in the Opening Brief, Mr. Balasiano testified that he was unable to determine when he concluded that the Debtor was solvent at the time of the Sunrise Transfer. Opening Brief pp. 41-43, citing to March 4 Tr. 102:10-14, Appendix Ex. 49, A1385; *id.* at 88:9-89:24, A1371-72. More troubling, it appears that Mr. Balasiano's conclusion was based almost entirely on his discussions with the Debtor's professionals and Mr. Sarrao, a target of the potential fraudulent conveyance claim, rather than his own independent determination. *See id.*

The record reveals that Mr. Balasiano relied exclusively on Mr. Sarrao in reaching his conclusion that the Debtor was solvent at the time of the Sunrise Transfer. The Debtor submitted Mr. Sarrao's declaration in support of confirmation of the plan on February 29, 2024. Sarrao Declaration. Appendix B Ex. 4, B0258 - 0736. Mr. Sarrao's declaration contains his analysis regarding the Debtor's solvency at the time of the Sunrise Transfer. *Id.* ¶¶ 72 – 76. B0283 – 0284. In his analysis, Mr. Sarrao opined that the Debtor was solvent in 2019 and 2020 based on his review of balance sheets and tax returns. *Id*.

The Debtor also submitted the declaration of Mr. Balasiano in support of confirmation of the plan on February 29, 2024. Balasiano Declaration. Appendix B, Ex. 3, B0250 – 0257. Although Mr. Balasiano asserted in his declaration that the Debtor was solvent at the time of the Sunrise Transfer, he failed to provide any support for his assertion. *See Id*. ¶ 19. B0255. At the confirmation hearing, however, Mr. Balasiano testified that the Debtor was solvent based on his review of the Debtor's balance sheets and tax returns, merely echoing Mr. Sarrao's declaration. March 4 Tr. 89: 11 – 24, Appendix Ex. 49, A1372. The limited evidence presented makes clear that rather than discharge his fiduciary duty to render an independent judgment on solvency, Mr. Balasiano relied exclusively on information and opinion provided to him by Mr. Sarrao.

**E.  The Debtor's evidence was insufficient to establish a *prima facie* case that the Debtor was solvent at the time of the Sunrise Transfer.**

Section 3439.02(a) of California Uniform Voidable Transfer Act provides in relevant part that "[a] debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." Cal. Civ. Code § 3439.02(a). As discussed in the Opening Brief, determining fair valuation requires more than simply reviewing balance sheets and tax returns. Opening Brief pp. 38 – 39. Rather, determining a fair valuation requires thorough analysis including the reduction of the face value of assets, especially assets that may be difficult to monetize. *Id.*

The Debtor, in relying solely on balance sheets and tax returns in determining the Debtor's solvency, did not perform a fair valuation. And the Debtor made no attempt to otherwise establish fair valuation of Alecto's assets and liabilities as of June 19, 2019. For example, as set forth in the Opening Brief (pp. 44 – 47), Mr. Sarrao testified at the sale hearing that,

- The Debtor made loans to its affiliates, including $60,000,000 to Sherman Grayson from 2014 to 2019 booked on the Debtor's balance sheets that Mr. Sarrao conceded that Sherman Grayson has been unable to pay back,[9] which he did not record or note in his solvency analysis.

- The Debtor failed to book a $10,000,000 withdrawal liability demand caused by the closing of a hospital operated by Alecto Fairmount for which Alecto was also liable. 3/5/2024 Tr. 100:15–101:22. Appendix Ex. 50, A1510 – 1051.

---

[9] First Supplemental Declaration of Michael Sarrao in Support of the Debtor's Retention Applications [Bankr. Ct. DI 133] ¶ 27. Appendix Ex. 37, A1074.

- The Debtor failed to book liabilities for debts it guaranteed even after a judgment had been entered. *Id*. 126:20 – 127:7. A1536-37.

- The Debtor failed to book liabilities for a demand for repayment by a government entity for Medicaid advance payments dating back many years, originally asserted in the amount of $12,000,000, and through the CMS proof of claim increased to $29,000,000, was totally excluded from the liability section of the Alecto balance sheets. 3/5/2024 Tr. 100:4 – 10, A1510 and 107:8 – 25, A1517.

- The Debtor failed to book a liability for a lawsuit filed by CMS against the Debtor for reimbursement of more than $12,000,000 in Medicare advance payments made to its Olympia affiliate because the liability originated with a subsidiary or affiliate. *Id*. 98:20–100:3. A1508 - 1510.

Mr. Balasiano's analysis ignores all of this evidence because he drew his conclusion straight from the face of the 2019 balance sheet and tax return the Debtor provided him. As a consequence, all of this evidence was ignored by the Bankruptcy Court when it accepted Mr. Balasiano's conclusion without comment.

As set forth in the Opening Brief, the Debtor did not ask its expert, GCS, to perform a valuation; in fact, the GCS Report makes no mention of solvency or insolvency. Moreover, the Debtor never even raised the solvency issue until filing the declarations of Mr. Balasiano and Mr. Sarrao on February 29, 2024, one week after the Reed Creditors filed their *Objection of the Reed Action Judgment Creditors to Confirmation of the Small Business Debtor's Plan of Reorganization Proposed by the Debtor* (the "Objection") [Bankr. Docket No. 299]. Appendix Ex. 34, A1013 – 1032. The Debtor then scrambled in response to the Objection and had Mr.

Balasiano and Mr. Sarrao, neither of whom are financial experts, perform the Debtor's solvency analysis.

The Debtor cites three cases for the proposition that experts are not needed to perform a solvency analysis. Resp. Br. pp. 52 – 53. This is true under certain circumstances. To be sure, it may have been permissible for Mr. Balasiano and Mr. Sarrao to prepare a solvency analysis designed to determine a fair valuation of the Debtor's assets and liabilities, but they did not do that. Their analysis was fatally flawed because they simply took the balance sheets and tax returns at face value and made no attempt to consider (or record) (i) value reductions for uncollectible assets or (ii) its significant contingent liabilities and debts of defunct or failing affiliates guaranteed by the Debtor.  As a result, the Debtor failed to establish even a *prima facie* case that the Debtor was solvent at the time of the Sunrise Transfer.

### F.   The Bankruptcy Court erred by misapplying the factors for approval of a settlement.

In applying the *Martin* factors for approval of a settlement, the Bankruptcy Court found as follows:

> [T]he claims have very little probability of success on the merits, if any. Absent the settlement, the Debtor would face increased expense, inconvenience and delay attending to the litigation. These are complex claims that could cause delay in the distribution of any assets to the creditors. Additionally, the creditors will receive the Settlement Consideration. As part of the disposable income to the Debtor. There was no evidence regarding the possibility of collection on any judgment, so this factor is neutral. The other three *Martin* factors weighs in favor of approving the settlement.

21

Confirmation Ruling p. 15 - 16. Appendix Ex. 51, A1622 - 1623.

The Bankruptcy Court misapplied the *Martin* factors. As discussed at length above, the Bankruptcy Court erred in finding that "the claims have very little probability of success on the merits, if any." Moreover, while it found that (i) the Debtor would face increased expense, inconvenience and delay if the settlement is not approved and (ii) the claims are complex and could cause a delay in the distribution of assets to creditors, the Bankruptcy Court did not cite to any record evidence supporting those findings. Accordingly, none of the *Martin* factors weighed in favor of approving the settlement of the Released Claims.

## Conclusion

WHEREFORE, for the foregoing reasons and the reasons stated in the Opening Brief, the Reed Creditors respectfully request that this Court reverse the Confirmation Order and remand this matter to the Bankruptcy Court with instructions that it hold further proceedings consistent with this Court's ruling.

Dated: December 18, 2024        **SULLIVAN · HAZELTINE · ALLINSON LLC**

 */s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
         whazeltine@sha-llc.com

and

22

Bren J. Pomponio, Esq.
Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email:  bren@msjlaw.org

        and

John Stember, Esq.
Maureen Davidson-Welling, Esq.
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email: jstember@stembercohn.com
mdavidsonwelling@stembercohn.com

*Counsel for The Reed Action Judgment Creditors*

## **CERTIFICATE OF COMPLIANCE**

I am one of the attorneys representing the appellants, the Reed Action Judgement Creditors.

This reply brief contains 5,647 words, excluding the items exempted by Fed. R. Bankr. P. 8015(g). The brief's type size and typeface comply with Fed. R. Bankr. P. 8015(a)(5) and (6).

I certify that this brief:

(a) Complies with the 6,500-word length limit pursuant to Federal Rule of Bankruptcy Procedure 8015(a)(7)(ii).

Dated: December 18, 2024          **SULLIVAN · HAZELTINE · ALLINSON LLC**

                                   /s/ William A. Hazeltine
                                   William D. Sullivan (No. 2820)
                                   William A. Hazeltine (No. 3294)
                                   919 North Market Street, Suite 420
                                   Wilmington, DE 19801
                                   Tel: (302) 428-8191
                                   Email: bsullivan@sha-llc.com
                                           whazeltine@sha-llc.com

                                   *Counsel for The Reed Action Judgment Creditors*